UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

| | | |
|---|---|---|
| JEFFREY NORTH, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 2:13-cv-00427-JMS-MJD |
| | ) | |
| CHARLES L. LOCKETT Warden, | ) | |
| WILLIAM E. WILSON Dr., | ) | |
| TRACY HEISER, TAMMY MCDANIAL, | ) | |
| KARL NORRIS, BIXLER Ms. (FNU), | ) | |
| SCHARFF Ms. (FNU), RUPSKA Mr. (FNU), | ) | |
| PUTHOFF Lieutenant (FNU), | ) | |
| BRACE Lieutenant (FNU), | ) | |
| | ) | |
| Defendants. | ) | |

**Entry Granting Defendants' Motion for Summary Judgment
and Directing Entry of Final Judgment**

For the reasons explained below, the plaintiff is not entitled to any relief in this action and

defendants' motion for summary judgment, dkt. [159], is **granted.**

## I. PROCEDURAL HISTORY

Plaintiff Jeffrey North ("Mr. North") is a federal inmate who went on a hunger strike while

confined at the United States Penitentiary in Terre Haute, Indiana, ("USP-Terre Haute") from July

2011 through February 2012. The circumstances that followed form the basis of the claims raised

in this civil rights action. The amended complaint, filed February 11, 2014, contains seven claims

for relief labeled by Mr. North as "counts." Mr. North seeks compensatory and punitive damages.

As to each of these claims, the defendants sought summary judgment or, in the alternative,

dismissal. See dkts. 108, 109 and 110. The plaintiff was permitted seven months to file a response

to the defendants' motion, but failed to do so. See dkt. 158.

For the reasons explained in the Entry of September 21, 2016, this Court denied without prejudice the defendants' motion for summary judgment and granted the alternative partial motion to dismiss. See dkt. 123. The alternative partial motion to dismiss was granted to the extent that Counts One, Three, Four, and Five were dismissed as time-barred pursuant to Rule 12(c) of the *Federal Rules of Civil Procedure*. Dismissal was appropriate based on the statute of limitations because "the relevant dates [that establish the defense] are set forth unambiguously in the complaint." *Brooks v. Ross*, 578 F.3d 574, 579 (7th Cir. 2009). In addition, this Court noted that "[n]othing in this ruling prohibits recruited counsel from raising a motion to reconsider based on facts not previously available to the Court." Dkt. 123 at 5, fn. 1.

Instead of ruling on the defendants' unopposed motion for summary judgment, however, this Court granted Mr. North's motion to suspend all pretrial activity to the extent that counsel was recruited to assist him with the claims remaining in this action given his stated physical and mental disabilities. See dkt. 123. The remaining claims alleged violations of Mr. North's Eight Amendment rights and include the following three counts:

Count Two: Mr. North alleges that Nurses Bixler, Norris, Scharff, McDaniel, and Heiser inflicted unnecessary pain and further damage to his nasal passage in connection with the insertion of nasogastric tubes at unspecified times in violation of his Eighth and First Amendment rights. Mr. North also alleges that Dr. Wilson and Warden Lockett were responsible as supervisors.

Count Six: Mr. North alleges that Assistant Health Services Administrator ("AHSA") Rupska and Warden Lockett violated his constitutional rights because he was placed in a medical cell that was extremely cold for seven months.

Count Seven: Mr. North alleges that from August 20, 2011, to February 28, 2012, his Constitutional rights were violated by Lt. Puthoff, Lt. Brace, and Warden Lockett because he was not allowed out of his cell for recreation.

As discussed in the Entry of April 11, 2017, the attorneys recruited by this Court to represent Mr. North are known to be experienced and competent. They reviewed the evidence provided to them from their client and through discovery. They researched the relevant law and expended a total of 190 hours investigating the merits of Mr. North's claims. They explained their assessment of the case to Mr. North in writing and by telephone. Mr. North, however, decided that he wanted his counsel to withdraw and to proceed *pro se*. This decision was made willingly and voluntarily after consultation with counsel and based on Mr. North's personal knowledge regarding the logistical and health issues he faces. Dkt. 157.

Once Mr. North was again proceeding *pro se*, the defendants' motion for summary judgment was reinstated on April 18, 2017, and Mr. North was given more than 60 days to file his response in opposition to that motion. Dkt. 158. The alternative partial motion to dismiss was not reinstated because it had already been ruled on. On June 26, 2017, Mr. North filed his Response to the Motion for Summary Judgment. Dkt. 163. Mr. North's response addressed all Counts, including Counts One, Three, Four and Five which were previously been dismissed as time barred. The Defendants replied on July 7, 2017. Dkt. 164.

Out of an abundance of caution this Court now **vacates** the dismissal of Counts One, Three, Four and Five pursuant to Rule 12(b)(6).[1] All Counts shall now be considered when ruling on the defendant's pending motion for summary judgment. This is appropriate because all Counts were originally at issue in the pending motion for summary judgment and all Counts were addressed in the plaintiff's response brief.

## II. STANDARD OF REVIEW

A motion for summary judgment asks that the Court find that a trial based on the uncontroverted and admissible evidence is unnecessary because, as a matter of law, it would conclude in the moving party's favor. *See* Fed. R. Civ. Pro. 56. To survive a motion for summary judgment, the non-moving party must set forth specific, admissible evidence showing that there is a material issue for trial. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986). The key inquiry, is whether admissible evidence exists to support a plaintiff's claims, not the weight or credibility of that evidence, both of which are assessments reserved to the trier of fact. *See Schacht v. Wis. Dep't of Corrections,* 175 F.3d 497, 504 (7th Cir. 1999). When evaluating this inquiry, the Court must give the non-moving party the benefit of all reasonable inferences from the evidence submitted and resolve "any doubt as to the existence of a genuine issue for trial ... against the moving party." *Celotex,* 477 U.S. at 330.

---

[1] It is noted that Mr. North had not yet been represented by counsel when the motion to dismiss was granted on September 21, 2016.

Whether a party asserts that a fact is undisputed or genuinely disputed, the party must support the asserted fact by citing to particular parts of the record, including depositions, documents, or affidavits. Fed. R. Civ. Pro. 56(c)(1)(A). Failure to properly support a fact in opposition to a movant's factual assertion can result in the movant's fact being considered undisputed, and potentially the grant of summary judgment. Fed. R. Civ. Pro. 56(e). The Seventh Circuit has explained:

> Once a party files a motion for summary judgment showing within its four corners entitlement to prevail, judgment must be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden at trial."

*Herman v. City of Chicago*, 870 F.2d 400, 404 (7th Cir. 1989) (quoting *Celotex*, 477 U.S. at 322).

### III. ENFORCEMENT OF LOCAL RULE 56-1

The Seventh Circuit has "repeatedly held that the district court is within its discretion to strictly enforce compliance with its local rules regarding summary-judgment motions." *Patterson v. Indiana Newspapers, Inc.*, 589 F.3d 357, 360 (7th Cir. 2009); *see also Pearle Vision, Inc. v. Romm*, 541 F.3d 751, 758 (7th Cir. 2008). That is the case here. The Southern District of Indiana's Local Rule 56-1 shall be enforced. *See also McNeil v. United States*, 508 U.S. 106, 113 (1993).

In making this ruling the Court notes that it could have taken a more flexible approach and ignored the deficiencies discussed below in Mr. North's filings. *See Gray v. Hardy*, 826 F.3d 1000, 1004-05 (7th Cir. 2016) (holding that district courts are not required to hold pro se litigants to the potential consequences of their failure to comply with the Local Rules and can instead take "a more flexible approach," including by ignoring the deficiencies in their filings and considering the

evidence they submit). Such flexibility is particularly warranted when a *pro se* litigant is proceeding without the benefit of counsel and where such flexibility allows the case to be considered on the merits. *See Robinson v. Sweeny*, 794 F.3d 782, 784 (7th Cir. 2015) ("[i]f the courts intend not to excuse procedural mistakes by pro se litigants, the spirit of legal justice would seem to require that someone inform those litigants of the rudiments of federal procedure . . . .").

In this case, however, counsel was recruited to represent Mr. North so that he could file a response in opposition to the motion for summary judgment that complies with this Court's Local Rules (and, as always, Rule 11 of the *Federal Rules of Civil Procedure*). Counsel spent considerable time and effort in that representation, but Mr. North declined that assistance. "Someone who spurns counsel cannot insist that his adversary and the judicial system provide equivalent advice and protection." *Denlinger v. Brennan*, 87 F.3d 214, 217 (7th Cir. 1996). In addition, Mr. North was provided with notice regarding his right to respond and of Rule 56 of the *Federal Rules of Civil Procedure* and Local Rule 56-1 on two separate occasions. Dkts. 110 and 158.

Accordingly, Mr. North's motion for extension of time, dkt. 166, and motion to file a second reply, dkt. 167, are **denied.** The Court will not consider Mr. North's papers submitted after the defendants' reply was filed. There are two reasons for this ruling. First, Mr. North was previously instructed that additional extensions of time would not be permitted because this case has been pending since December 2013, and Mr. North was previously permitted seven months to file a response to this same motion for summary judgment. See dkts. 118, 158 and 162. Second, Local Rule 56-1 provides for the filing of a brief in support of a motion for summary judgment, an

answering brief, and a reply brief. A party opposing a summary judgment motion may file a surreply brief only if the movant cites new evidence in the reply or objects to the admissibility of the evidence cited in the response. S.D. Ind. Local Rule 56-1(d). The surreply must be filed within 7 days after the movant serves the reply and must be limited to the new evidence and objections. *Id.*

Mr. North's proposed "Second Reply" is in essence a surreply, which does not meet any of the requirements of the Local Rule. In their reply brief, the defendants did not introduce any new evidence, nor did they object to the admissibility of the evidence designated by Mr. North (because he designated none). Under these circumstances, Local Rule 56-1 shall be strictly enforced.[2] *Perron on behalf of Jackson v. J.P. Morgan Chase Bank, N.A.*, 845 F.3d 852, 856 (7th Cir. 2017) (the judge has broad discretion to enforce the local rules).

In addition, Mr. North has opposed the motion for summary judgment, but his response is inadequate to create a genuine issue of material fact. Local Rule 56-1(b) requires a brief in opposition to a motion for summary judgment to include a section labeled "Statement of Material Facts in Dispute" which responds to the movant's asserted material facts by identifying the potentially determinative facts and factual disputes which the nonmoving party contends demonstrate that there is a dispute of fact precluding summary judgment. These facts must be

_____

[2] There is one exception to this ruling to strictly construe the Local Rules, which is made in favor of Mr. North. Specifically, Local Rule 7-1(e) states that response briefs may not exceed 35 pages. Mr. North's response brief is 50 pages. This oversized brief shall be permitted in this instance because the response brief is handwritten and double spaced and allowing consideration of the entire brief in this instance is not a burden to the court or the defendants (who did not object on this basis).

supported by appropriate citations to admissible evidence. *See* L.R. 56-1(e); *Edward E. Gillen Co. v. City of Lake Forest*, 3 F.3d 192, 196 (7th Cir. 1993). Mr. North did not provide a "Statement of Material Facts in Dispute" nor did he provide citations to factual assertions in his brief.

Mr. North's failure to properly oppose the motion for summary judgment with a statement of material facts in dispute supported by admissible evidence has a particular consequence, which is that he has admitted the truth of the defendant's statement of material facts for purposes of the Court acting on the motion for summary judgment. *See Johnson v. Gudmundsson,* 35 F.3d 1104, 1108 (7th Cir. 1994). This does not alter the standard for assessing a Rule 56 motion, but does "reduc[e] the pool" from which the facts and inferences relative to such a motion may be drawn. *Smith v. Severn,* 129 F.3d 419, 426 (7th Cir. 1997); *see also Smith v. Lamz,* 321 F.3d 680, 683 (7th Cir. 2003) ("Smith's summary-judgment materials were woefully deficient in either responding adequately to the defendants' statement or in setting forth additional facts with appropriate citations to the record. As such, … the district court did not abuse its discretion in deeming admitted and only considering the defendants' statement of material facts.").

## IV. UNDISPUTED FACTS

Applying the standards set forth above, the undisputed material facts are as follows:

**A. Statute of Limitations**

North filed his complaint on December 12, 2013. He signed his complaint on November 28, 2013.

Count One of North's Amended Complaint sets out a claim regarding his first nasogastric tube feeding at FCC Terre Haute. That feeding occurred on August 10, 2011.

Count Three of North's Amended Complaint addresses matters occurring at the latest in September 2011.

Count Four of North's Amended Complaint addresses matters allegedly commencing in August, 2011, and continuing for three weeks.

Count Five addresses matters that allegedly occurred during that same time frame as Count Four.

**B. Involuntary Feeding Procedures**

The decision to involuntarily feed Mr. North was a medical decision based upon a clinical diagnosis of impending malnutrition. The involuntary feedings occurred to prevent organ damage and save Mr. North's life due to his refusal to voluntarily consume either food or the nutritional supplement, which he was always offered. Based upon the medical records, Mr. North was involuntarily fed 348 times. Despite the involuntary feedings, Mr. North lost approximately 29 pounds during his hunger strike activity at USP-Terre Haute.

Each day before any involuntary feeding, Mr. North was offered food, and every day, he refused. Mr. North was medically assessed before and after each feeding procedure; he was constantly monitored via lab work and physical examinations. Mr. North was routinely advised of the potential consequences relative to his hunger strike activity. Specifically, Mr. North was advised prior to each feeding that some associated complications of tube feeding included aspiration of liquid contents, pneumonia, vomiting, sore throat, nasal bleeding, esophageal tear, and nasal damage. Each time he refused nutritional supplements, so the feeding procedure was undertaken.

The process used to initiate a nasogastric feeding was that staff members would insert an appropriately lubricated nasogastric tube through Mr. North's nose and its position was verified by medical staff members. The nutritional supplement and water were then administered through the tube, in amounts predetermined by a medical doctor, and the tube was removed, all by trained medical staff. Following the administration of the liquids, Mr. North was to remain in an upright position for 90 minutes to minimize the potential for aspiration and other adverse health effects. After the 90 minute observation period, Mr. North was escorted back to his housing quarters, and all restraints were removed.

Dr. Douglas K. Rex, an outside doctor board certified in Internal Medicine and Gastroenterology, testified that the medical care providers' actions were appropriate and within the standard of care. Dr. Rex based his opinion on Mr. North's medical record and review of a sample of videos that were taken of the nasogastric tube feedings. Dkt. 108-11 at 5.

## C. Restriction on Recreation

During the time Mr. North was being involuntarily feed, it was medically appropriate and within the standard of care for Mr. North's access to recreational activities to be suspended, in an effort to prevent Mr. North from increasing his physical activity. This is because physical activity would potentially negate or defeat the feeding effort to maintain an appropriate nutritional intake and would place Mr. North at risk of injury due to the effects of possible dehydration. Based upon the medical judgment of Bureau of Prison ("BOP") staff physicians, there were adverse health risks associated with Mr. North's hunger strike activity making it inappropriate for him to have recreation other than walking or stretching within his cell.

It was Lt. Brace's understanding that due to Mr. North's limited food and water intake, strenuous recreation was not advised. Lt. Brace deferred to the medical judgment of those qualified to make such decisions. Lt. Brace did not decide when or where Mr. North or any other inmate would recreate.

The decision that Mr. North was not to have recreation was a clinical decision, made by Mr. North's medical providers. Lt. Puthoff was not one of Mr. North's medical providers. Lt. Puthoff was advised by medical staff that any vigorous exercise would have increased Mr. North's risk for injury due to dehydration, exhaustion, or fatigue. Further, Lt. Puthoff was advised that vigorous exercise would have increased Mr. North's need for hydration, and daily caloric intake, and would therefore have lessened any benefit achieved as a result of his involuntary feedings. Lt. Puthoff had no decision making authority or input with respect to Mr. North's recreation activity.

Warden Lockett relied upon, and deferred to, the medical judgment of staff physicians. He was informed of the health risks associated with Mr. North's hunger strike activity and that the staff physicians deemed him inappropriate for recreation other than walking or stretching within his cell. Specifically, according to Mr. North's medical records, and in speaking with the staff physicians at the time of the hunger strike, Warden Lockett was advised that any vigorous exercise would have increased Mr. North's risk for injury due to dehydration, exhaustion, or fatigue. Further, Warden Lockett was advised that vigorous exercise would have increased Mr. North's need for hydration, and daily caloric intake, and would therefore have lessened any benefit achieved as a result of his involuntary feedings. Warden Lockett deferred to the medical judgment summarized above with respect to Mr. North's recreation activity.

On October 30, 2011, Mr. North characterized himself as feeling the healthiest that he had been in many years.

**D. Mr. North's Cell Conditions**

AHSA Rupska was not responsible for the conditions in Mr. North's cell. AHSA Rupska was not responsible for, and was not in control of clinical decisions such as Mr. North's living conditions while he was on a hunger strike. Mr. North's housing was a clinical decision, and in accordance with BOP's hunger strike protocol so that his food intake, if any, could be monitored and documented, and further, so that Mr. North could be in a close proximity to Health Services staff members to ensure his safety due to the extreme health risks associated with his hunger strike activity. Specifically, AHSA Rupska was not responsible for determining the specific cell or location Mr. North would be housed in, nor was he responsible for, or in control of, the temperature of the room the Mr. North was housed in.

The medical isolation rooms at USP-Terre Haute are the same temperature as the entirety of the medical department, which includes staff offices and exam rooms. There is no thermostat or temperature control device within the medical department. The temperature of USP-Terre Haute, including the medical isolation room in the Health Services Department is controlled and monitored by the Facilities Department in the Central Utility Plant ("CUP") which is outside the physical confines of the USP-Terre Haute facility.

Neither Warden Lockett nor AHSA Rupska was directly responsible for the temperature or air circulation in the isolation cell. Further, the air circulation in the medical isolation room is part of a negative pressure system which is likewise monitored by the Facilities Department, and is

serviced by an outside contractor on an annual basis to ensure it is functioning properly.

## V.  DISCUSSION

The defendants' claim that they are entitled to summary judgment and the plaintiff has opposed this motion. With the procedural background, law and undisputed facts set forth above in mind, this Entry now turns to the merits of the parties' arguments. These arguments are broken into two sections. First, whether the defendants are entitled to summary judgment on the basis that Counts One, Three, Four, and Five are barred by the applicable statute of limitations. Next, whether the defendants are entitled to summary judgment on Counts Two, Six and Seven because the plaintiff has failed to present evidence that his Eighth Amendment rights were violated as alleged in these Counts.

### A. Statute of Limitations

Mr. North has sued the defendants under the *Bivens* doctrine, which allows suits against federal employees for violations of constitutional rights. *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics*, 403 U.S. 388 (1971). The statute of limitations in a *Bivens* claim is the same as that for a claim brought pursuant to 42 U.S.C. § 1983. *See Lewellen v. Morely*, 875 F.2d 118, 119 (7th Cir. 1989); *Bieneman v. City of Chicago*, 864 F.2d 463, 469 (7th Cir. 1988). In these cases, "federal courts apply the statute of limitations governing personal injury actions in the state where the injury took place." *Serino v. Hensley*, 735 F.3d 588, 590 (7th Cir. 2013). "In Indiana, such claims must be brought within two years." *Id.* (citing Ind. Code § 34-11-2-4). In addition, Indiana's tolling rules apply and "Indiana law treats disability as a reason for tolling the statute of limitations." *Richards v. Mitcheff*, 549 F. App'x 572 (7th Cir. 2014) ("federal law under

42 U.S.C. § 1988 absorbs both the period of limitations from state law and the corresponding tolling rules.").

Federal law, however, determines when that statute begins to run. *Bivens* and § 1983 claims "accrue when the plaintiff knows or should know that his or her constitutional rights have been violated." *Savory v. Lyons*, 469 F.3d 667, 672 (7th Cir. 2006). The Court conducts a two-part inquiry to determine when this standard is met: "First, a court must identify the injury. Next, it must determine the date on which the plaintiff could have sued for that injury." *Id.*

There is no dispute that the matters complained of in Mr. North's Counts One, Three, Four, and Five accrued at the latest in September of 2011. Mr. North filed his complaint (at the earliest) on November, 28, 2013, when he signed it and it could have been placed in the USP-Terre Haute's mail.[3] Thus, Counts One, Three, Four, and Five were filed more than 2-years after the claims raised therein accrued.

Because the defendants have established that Counts One, Three, Four, and Five were commenced beyond the two-year statutory period, the burden is now on Mr. North to establish an issue of fact material to a theory that avoids the defense. *Boggs v. Tri–State Radiology, Inc.*, 730 N.E.2d 692, 695 (Ind. 2000). "This is appropriate because the facts establishing incapacity or the reasonableness of the plaintiff's diligence in filing his or her claim are uniquely within the

---

[3] Pursuant to the "prison mailbox rule," a pro se prisoner's complaint is deemed filed when it is handed over to prison staff for mailing, not on the date it is received by the clerk of the court. *See Houston v. Lack,* 487 U.S. 266, 275-76 (1988); *Ingram v. Jones,* 507 F.3d 640, 643-45 (7th Cir. 2007); *Brand v. Motley*, 526 F.3d 921, 925 (6th Cir. 2008).

plaintiff's knowledge." *Id.*

In response, Mr. North argues his claims are not untimely because the statute of limitations should be tolled under Indiana law. Dkt. 163 at 4. In support of his claim that the statute of limitations should be tolled Mr. North references the Indiana Constitution, Article I, Section 12. This provision states:

> Section 12. All courts shall be open; and every person, for injury done to him in his person, property, or reputation, shall have remedy by due course of law. Justice shall be administered freely, and without purchase; completely, and without denial; speedily, and without delay.

Ind. Cost. Art. 1 § 12 (amended Nov. 6, 1984).

In *Herron v. Anigbo,* the Indiana Supreme Court noted (in the context of a medical malpractice case) "that under Article I, Section 12's guarantee of a remedy by due course of law, unusual circumstances of the plaintiff may prevent access to the courts and suspend the period in which reasonable diligence is required." 897 N.E. 2d 444, 451 (Ind. 2008). Specifically, "the statute [of limitations] would be unconstitutional as applied to the plaintiff if he 'was mentally and physically incapacitated' so that he could not give the notice as required by the statute." *Herron,* 897 N.E. 2d at 451 (quoting *City of Fort Wayne v. Cameron*, 370 N.E.2d 338, 341 (1977)). In the absence of any statutory provision for tolling the statute of limitations, the Indiana constitutional right to remedy by due course of law entitles a plaintiff who is "mentally and physically incapacitated so that he could not give" the required notice to "a reasonable time after his disability [is] removed within which to file . . . ." *Polick v. Indiana Dept. of Highways*, 668 N.E.2d 682, 684 (Ind. 1996) (quoting *Cameron*, 370 N.E.2d at 341). In other words, "if a victim of a tort is disabled

during part of the period of limitations, but becomes well enough to file suit before that time expires, then the victim must file suit before the normal expiration date 'if possible in the exercise of due diligence.'" *Richards*, 549 F. App'x 572 (7th Cir. 2014) (quoting *Herron*, 897 N.E.2d at 449).

Mr. North argues that during his seven month hunger strike he was held in a single cell medical isolation unit and that "prison staff incapacitated him in several ways." Dkt. 163 at p. 6. As discussed in Part III of this Entry, Mr. North has not properly submitted any evidence in support of this claim. But even if Mr. North's declaration dated June 20, 2017, were considered, it is insufficient to create a material fact in dispute. Dkt. 165. Instead of showing that Mr. North was incapacitated, the declaration would show that despite a variety of hardships and barriers Mr. North was able to submit grievances/administrative remedy requests during the relevant seven month time period. This evidence directly contradicts Mr. North's suggestion that he was incapacitated such that the statute of limitations should have been tolled due to his incapacity.

In addition, the alleged incapacity was a result of Mr. North's placement in isolation for a seven month period from July 2011 through February 2012. Mr. North does not provide any basis to conclude that he acted with reasonable diligence after February 2012 (when he was released from medical isolation) and August 10, 2013, when the statute of limitations period ran on Count One.[4] Mr. North had even more time, through as late as September 30, 2013, in which to file a

---

[4] Count One is based on Mr. North's first nasogastric tube feeing at USP-Terre Haute on August 10, 2011.

lawsuit regarding Counts Three, Four and Five.[5] *Polick v. Indiana Dept. of Highways*, 668 N.E.2d 682, 684 (Ind. 1996) (plaintiff is entitled to a reasonable time after his disability is removed within which to file).

Under these circumstances, no reasonable trier of fact could conclude that Mr. North did not have sufficient time or opportunity to file his Complaint. In addition, "Indiana does not recognize incarceration as a legal disability precluding plaintiffs' ability to bring suit. *Diaz v. Carpenter*, 650 N.E.2d 688, 691–92 (Ind. Ct. App. 1995); *Alexander v. City of South Bend*, 256 F.Supp.2d 865, 874 (N.D. Ind. 2003)." *Richards v. Mitchell*, 2013 WL 3225835 at *3 (S.D. Ind. June 25, 2013).

Mr. North has not shown that the two-year statute of limitations as applied to him violates Article I, Section 12 of the Indiana Constitution. He was not denied a meaningful opportunity to pursue his constitutional claims. Accordingly, summary judgment is granted in favor of the defendants on Counts One, Three, Four and Five because these claims are barred by the statute of limitations. Under these circumstances the merits of Mr. North's underlying claims against the individual defendants shall not be assessed further.

## B. Eighth Amendment Claims

The remaining claims for relief in this action are based on the protections afforded by the Eighth Amendment. Specifically, prison officials have a duty under the Eighth Amendment to

---

[5] Count Three of North's Amended Complaint addresses matters occurring "[F]rom approximately August 10, 2011, to a point in September 2011. . ." Dkt. 12 at 4. Count Four of North's Amended Complaint addresses matters allegedly commencing in August, 20, 2011, and continuing for three weeks. Count Five address matters that occurred during the same time frame as Count Four.

provide humane conditions of confinement. *Farmer v. Brennan*, 511 U.S. 825, 832 (1994). A prison official may be held liable under the Eighth Amendment for acting with deliberate indifference to inmate health or safety only if the prison official knows that an inmate faces a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to avoid it. *Id.* at 847. To show deliberate indifference, plaintiff must show the defendants actually knew of a substantial risk of harm to the inmate and acted or failed to act with disregard for that risk. *Walker v. Benjamin*, 293 F.3d 1030, 1037 (7th Cir. 2002).

The defendants argue that they are entitled to summary judgment because Mr. North has failed to present admissible evidence with regard to essential elements to which Mr. North has the burden. The Supreme Court has noted:

> In our view the plain language of rule 56(b) mandates the entry of summary judgment . . . against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial. In such a situation, there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial.

*Celotex*, 477 U.S. at 322-23. For the reasons explained below, this position is persuasive and the defendants are entitled to summary judgment on Counts Two, Six and Seven.

### 1. Count Two

In Count Two, Mr. North alleged that Nurses Bixler, Norris, Scharff, McDaniel, and Heiser inflicted unnecessary pain and damage to his nasal passage in connection with the insertion of nasogastric tubes at unspecified times, and that Dr. Wilson and Warden Lockett were responsible as supervisors.

The defendants argue that they are entitled to summary judgment because Mr. North cannot establish that these individual defendants acted with deliberate indifference. Specifically, Mr. North has produced no testimony that any involuntary feeding has ever taken place without medical approval. Mr. North cannot remember which of the nurses named in Count Two allegedly inflicted pain upon him. North Dep. page 40, lines 20-24; dkt. 108-12 at 9. Nor is there any evidence that any of the nurses named in Count Two did anything specific related to his care. North Dep. page 40, line 20 – page 41, line 13; dkt. 108-12 at 9.

Relatedly, there is no evidence in this case that the defendants' actions were "so far afield of accepted professional standards as to raise the inference that it was not actually based on a medical judgment." *Norfleet v. Webster*, 439 F.3d 392, 396 (7th Cir. 2006); *see also Estelle v. Gamble*, 429 U.S. 97, 104–106 (1976) (holding that in assessing whether the government has met its obligation to provide medical care for those whom it incarcerates, "a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs."). Instead, the record reflects that the medical care professionals involved in the insertion of a nasogastric tube did so to promote Mr. North's health and Dr. Douglas K. Rex, an outside doctor board certified in Internal Medicine and Gastroenterology, provided his testimony in support of the assertion that the medical care providers' actions were appropriate and within the standard of care. Dr. Rex based his opinion on Mr. North's medical record and review of a sample of videos that were taken of the nasogastric tube feedings. Dkt. 108-11 at 5. It is not inconsistent to presume that Mr. North experienced the pain from the insertion of the nasogastric tube as he alleges and that the medical staff was not indifferent that pain (known associated complications of tube feeding

include aspiration of liquid contents, pneumonia, vomiting, sore throat, nasal bleeding, esophageal tear, and nasal damage). A prison official "who actually [knows] of a substantial risk to inmate health or safety may be found free from liability if [he] responded reasonably to the risk, even if the harm ultimately was not averted." *Farmer*, 511 U.S. at 844.

Accordingly, Defendants Nurses Bixler, Norris, Scharff, McDaniel, and Heiser are entitled to judgment in their favor as to Count Two.

### 2. Count Six

In his response brief, Mr. North makes no argument and presents no evidence regarding Count Six, in which he alleged that defendants AHSA Rupska and Warden Lockett placed him in an "extremely cold" medical cell. Conversely, these defendants presented evidence that they were not involved in decisions about Mr. North's cell placement during the involuntary feedings, which were clinical decisions made by medical staff pursuant to the hunger strike protocol. In addition, there is no dispute that Mr. North's cell was the same temperature as the other rooms in the medical department, including staff offices and exam rooms.

Based on the foregoing, Mr. North cannot establish that either defendant was aware of any "substantial risk" of "serious harm" caused by Mr. North's placement in the medical isolation cell, nor that he was actually in any risk of harm based on his cell temperature. As a result, defendants AHSA Rupska and former Warden Lockett are entitled to summary judgment as to Count Six. *See Schacht v. Wisconsin Dep't of Corr.*, 175 F.3d 497, 504 (7th Cir. 1999) (holding that summary judgment is the "moment in a lawsuit, when a party must show what evidence it has that would convince a trier of fact to accept its version of events").

### *3. Count Seven*

In Count Seven, Mr. North alleges that from August 20, 2011, to February 28, 2012, his constitutional rights were violated by Lt. Puthoff, Lt. Brace, and Warden Lockett because he was not allowed out of his cell for recreation.

The undisputed record reflects that the decision to suspend Mr. North's recreation activities for a period of time was reasonable and based on medical advice and direction from BOP physicians. Specifically, the BOP medical staff determined that exercise beyond walking or stretching in his cell would potentially defeat or negate the health benefits of the involuntary feedings and place Mr. North at risk of reduced caloric intake or dehydrations. Lt. Brace, Lt. Puthoff and Warden Lockett relied upon this advice and deferred to the judgment of medical professionals in deciding whether Mr. North should have recreation time.

In addition, Mr. North does not allege or establish that the deprivation of recreation yard privileges caused him to suffer unusual health consequences or an "impending harm easily preventable." *Rasho v. Walker*, 393 Fed. Appx. 401, 403 (7th Cir. 2010) (quoting *Jackson v. Duckworth*, 955 F.2d 21, 22 (7th Cir. 1992)). On the contrary, Mr. North testified that on October 30, 2011, he was feeling the healthiest that he had been in many years. Dkt. 108-12 at 12; North Dep. at page 58, line 5 – page 59, line 19 (claiming that he was healthier than he had been before his hunger strike, even in the absence of recreation).

Based on the foregoing, the Defendants Lt. Brace, Lt. Puthoff, and former Warden Lockett are entitled to summary judgment as to Count Seven.

### *4. Qualified Immunity*

The defendants argue that even if they are found to have violated Mr. North's Eighth Amendment rights, they are entitled to qualified immunity. "Qualified immunity protects officers performing discretionary functions from civil liability so long as their conduct does not violate clearly established statutory or constitutional rights that a reasonable person would know about." *Mustafa v. City of Chicago*, 442 F.3d 544, 548 (7th Cir. 2006) (*citing Saucier v. Katz*, 533 U.S. 194, 201 (2001)). Analysis of the qualified immunity defense requires a consideration of: (1) whether the plaintiff's constitutional rights were violated and (2) whether the right clearly established at the time. *Id.*

The defendants argue it would not have been clear to the defendants that it was "unlawful" for Mr. North to be provided nutrition by a nasogastric tube when he chose to go on a hunger strike, that he should not have been placed in the isolation cell to allow his health and caloric intake to be better monitored during the hunger strike, or for him to not to be allowed the opportunity for vigorous exercise, which would potentially harm his heath. Mr. North does not respond to this argument.

For the reasons explained above, however, there was no constitutional violation, *see Jackson v. Parker*, 627 F.3d 634, 635 (7th Cir. 2010); *Suarez v. Town of Ogden Dunes*, 581 F.3d 591, 595 (7th Cir. 2009), and a qualified immunity defense is irrelevant. *Mucha v. Vill. of Oak Brook*, 650 F.3d 1053, 1057–58 (7th Cir. 2011).

## VI. CONCLUSION

It has been explained that "summary judgment serves as the ultimate screen to weed out truly insubstantial lawsuits prior to trial." *Crawford-El v. Britton,* 118 S. Ct. 1584, 1598 (1998). This is a vital role in the management of court dockets, in the delivery of justice to individual litigants, and in meeting society's expectations that a system of justice operate effectively. Indeed, "it is a gratuitous cruelty to parties and their witnesses to put them through the emotional ordeal of a trial when the outcome is foreordained," and in such cases, summary judgment is appropriate. *Mason v. Continental Illinois Nat'l Bank,* 704 F.2d 361, 367 (7th Cir. 1983).

Mr. North has not identified a genuine issue of material fact as to his claims in this case and the defendants are entitled to judgment as a matter of law. Therefore, the Defendants' Motion for Summary Judgment, dkt. [159], is **GRANTED.**

Judgment consistent with this Entry shall now issue.

**IT IS SO ORDERED.**

Date: 8/18/2017

Hon. Jane Magnus-Stinson, Chief Judge
United States District Court
Southern District of Indiana

Distribution:

JEFFREY NORTH
22170-038
COLEMAN - II USP
COLEMAN II U.S. PENITENTIARY
Inmate Mail/Parcels
P.O. BOX 1034
COLEMAN, FL 33521

Jeffrey L. Hunter
UNITED STATES ATTORNEY'S OFFICE (Indianapolis)
jeff.hunter@usdoj.gov

Shelese M. Woods
UNITED STATES ATTORNEY'S OFFICE
shelese.woods@usdoj.gov